UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

MARCUS LEWIS,

            Petitioner,              Case No. 1:23-cv-887

v.                                       Honorable Jane M. Beckering

RANDEE REWERTS,

            Respondent.
_____/

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual Allegations**

Petitioner Marcus Lewis is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On April 17, 2019, following a three-day jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of delivery of less than 50 grams of a controlled substance and two counts of possession with intent to deliver less than 50 grams of a controlled substance. On June 20, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, and as a subsequent drug offender, Mich. Comp. Laws § 333.7413(2), to concurrent prison terms of 10 to 60 years for each offense. Petitioner's minimum sentences represented a substantial upward departure from the maximum minimum sentence dictated by the Michigan Sentencing Guidelines.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> In this case, Shawn Osborn phoned defendant to purchase some cocaine. Defendant agreed to meet Osborn at a party store. Osborn's "associate," Brandon Jones, drove Osborn to the party store. Shortly after they arrived at the store, defendant pulled up to the store in his vehicle. Osborn entered defendant's SUV and purchased a rock of cocaine from defendant for $20. Two detectives with the Grand Rapids Police Department, Steven Stoddard and Ross VandenBerg, were surveilling the party store and witnessed an exchange between the two men that resembled a drug transaction. Osborn proceeded to exit defendant's vehicle, return to Jones's car, and then leave the party store in Jones's vehicle. Detective VandenBerg testified that Osborn had a "cupped" hand when he climbed out of defendant's SUV. Defendant also left the party store's parking lot in his SUV after the exchange. Defendant's vehicle was then stopped by police, and both defendant and his SUV were searched. No drugs were found on defendant or in his vehicle. He was arrested and taken to jail. Jones and Osborn were stopped by police in a Meijer parking lot. Both men confessed that Osborn had just purchased drugs from defendant, and cocaine and heroin were found in Jones's vehicle. The detectives went through Osborn's cell phone and noticed that Osborn had placed a call to a person identified as "Mel" a few hours before the drug exchange in the parking lot had occurred. "Mel" was an alias used by defendant. The next day Detective VandenBerg swore out an affidavit as part of a request for a search warrant covering defendant's apartment, and a magistrate issued a warrant authorizing a search of the home. In defendant's

2

apartment, the police found and seized plastic sandwich bags, inositol powder, cocaine, heroin, and a digital scale.

*People v. Lewis*, No. 349774, 2021 WL 220763, at *1 (Mich. Ct. App. Jan. 21, 2021) (footnote omitted). "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Petitioner, with the assistance of counsel, filed an appeal of his convictions and sentences in the Michigan Court of Appeals raising several issues, including the Fourth Amendment issues he raises by way of the present petition. The Michigan Court of Appeals affirmed the trial court by opinion issued January 21, 2021. Petitioner then filed a pro per application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered July 21, 2023.

On August 16, 2023, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I. Prosecutor submitted a sworn Affidavit so born by one of the detectives. Or drug enforcement. "Which I am alleging it-simply shows no nexus." As indicated theres nothing to support any relations between the initial, stop that could possible relate to my Apartment. . . .

II. Whether its required that Police Officers state facts connecting the home they seek to search to the crime alleged does not elevate existing standards governing search warrants.

III. Whether the facts specific outcome in search & Seizure cases do not relieve officers of their duty to state at least some Plausible fact-base Connection . . . .

(Pet., ECF No. 1, PageID.6–9.)[1]

---

[1] The grounds are presented here as they are presented in the petition, including errors in punctuation, spelling, and grammar. The grounds as stated in Petitioner's brief are slightly different and, perhaps, a bit clearer. *See* Pet'r's Br., ECF No. 2, PageID.26. The key fact to draw from Petitioner's statement of his habeas grounds is that all grounds are related to Fourth Amendment search and seizure requirements.

3

## II. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.   Discussion**

Although Petitioner's contentions are spread across three habeas grounds, the crux of Petitioner's petition is that the search of his residence violated the Fourth Amendment and that evidence discovered and seized by the officers should have been suppressed because it was obtained in violation of the Constitution. Claims for habeas relief based on Fourth Amendment violations are barred by the doctrine set forth in *Stone v. Powell*, 428 U.S. 465 (1976). *See also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone* bars Fourth Amendment claims). In *Stone*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. On the first prong, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g.*, *People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g.*, *Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (discussing that habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit has pointedly held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination

7

of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down; rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. The trial court heard Petitioner's motion to suppress the evidence, but denied the motion. The court of appeals addressed Petitioner's challenges to the trial court's decision on the motion to suppress and concluded that the challenges lacked merit, legally and factually. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the *Stone* standard. *See Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his illegal search and seizure claims are barred from habeas review. Accordingly, Petitioner's habeas petition will be dismissed.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under

8

*Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   September 25, 2023                    /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge